1
2
3
4
5
6          UNITED STATES DISTRICT COURT
7          EASTERN DISTRICT OF WASHINGTON

8   PATRICK ALLEN WHITESIDE,

9       Petitioner,                          NO.  CV-11-243-RHW

10      v.                                   **ORDER GRANTING
                                             PETITIONER'S MOTION FOR
11  CAROLYN W. COLVIN, Acting                SUMMARY JUDGMENT;
    Commissioner of Social Security,         DENYING RESPONDENT'S
12                                           MOTION FOR SUMMARY
13      Respondent.                          JUDGMENT**

14
15       Before the Court are Petitioner's Motion for Summary Judgment, ECF No.

16  15 and Respondent's Motion for Summary Judgment, ECF No. 18. The motions

17  were heard without oral argument. Petitioner is represented by Rebecca M. Coufal.

    Defendant[1] is represented by Pamela De Rusha and M. Thayne Warner.
18
19  **I.    Jurisdiction**

20       On July 30, 2008, Petitioner Patrick Whiteside protectively filed a Title II

21  application for disability insurance benefits (DIB) and a Title VII application for

22  Supplemental Social Security Income (SSI). Petitioner alleges he has been

23  disabled since October 1, 2007. At the hearing, Petitioner amended his alleged

24       [1]Carolyn W. Colvin became the Acting Commissioner of Social Security on

25  February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,

26  Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this

27  suit. No further action need be taken to continue this suit by reason of the last

28  sentence of 42 U.S.C. § 405(g).

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY
JUDGMENT; DENYING RESPONDENT'S MOTION FOR SUMMARY
JUDGMENT   ~ 1**

onset date to October 31, 2007.

His applications were denied initially on September 24, 2008, and again denied on reconsideration on November 17, 2008. A timely request for a hearing was made. On October 15, 2009, Plaintiff appeared in Spokane, Washington before Administrative Law Judge (ALJ) Paul T. Hebda. K. Diane Kramer, vocational expert, also participated. Plaintiff was represented by attorney Allan Bonney.

The ALJ found that Plaintiff was not disabled at any time from October 31, 2007 through October 23, 2009. Plaintiff timely requested review by the Appeals Council, which was granted. The Appeals Council did not agree with the ALJ's findings that Petitioner's borderline intellectual functioning is a non-severe impairment. Nevertheless, the Appeals Council found that Petitioner was not disabled within the framework of the Medical-Vocational Rules 201.25 and 201.19.

The Appeals Council's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.10. Plaintiff filed an appeal with the U.S. District Court for the Eastern District of Washington on June 28, 2011. The instant matter is before the district court pursuant to 42 U.S.C. § 405(g).

## II.   Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT  ~ 2**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities?  20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. §§ 404.1574, 416.972; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. §§ 404.1571, 416.920(b). If he is not, the ALJ  proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity?  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.*  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant is able to perform his previous work, he is not disabled.  *Id.*  If the claimant cannot perform this work, the ALJ proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**  ~ 3

in view of his age, education, and work experience?  20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity.  *Id.*

## III.   Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 .S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors  as long as they are immaterial to the ultimate non-disability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT  ~ 4**

**IV.    Statement of Facts**

The facts have been presented in the administrative transcript and the ALJ's decision, and will only be summarized here.

At the time of the hearing, Petitioner was 46 years old. He left school after the 11th grade, but has not obtained his GED. His prior work involved working security for events taking place at the Spokane Arena. He also reported he worked construction, although he also explained that his work in construction involved carrying palettes and boards.

In 2007, Petitioner began experiencing back pain. It made it difficult for him to work. Generally, he spends his days laying down and watching TV. He also babysits his stepchild. At the time of the hearing, Petitioner had recently had surgery on his right knee.

**V.    The Appeals Council's findings**

The Appeals Council found Petitioner meets the insured status requirements through December 31, 2011. (Tr. 6.)

At step one, the Appeals Council found that Petitioner had not engaged in substantial gainful activity since October 31, 2007, the amended alleged date of disability, November 9, 2007. (Tr. 6.)

At step two, the Appeals Council found Petitioner had severe impairments: discogenic disorder of the back; degenerative joint disease (left knee); status-post arthroscopy (right knee); obesity; and borderline intellectual functioning. (Tr. 4.)

At step three, the Appeals Council found that Petitioner does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (Tr. 4.)

The Appeals Council found Petitioner has the residual functional capacity to perform sedentary work, except he can occasionally operate foot controls with his right lower extremity; he can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs; he can never climb ladders, ropes, or scaffolds; and he should

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT  ~ 5**

avoid concentrated exposure to cold, unprotected heights, or moving or hazardous machinery. He is also limited to jobs that require simple repetitive tasks. (Tr. 6.)

At step four, the Appeals Council found Petitioner was unable to perform any past relevant work. (Tr. 4.)

At step five, the Appeals Council concluded that there were jobs in the national economy that Plaintiff could perform, considering age, education, work experience, and residual functional capacity. (Tr. 4.). The Appeals Council relied on the framework of Medical-Vocations Rules 201.25 and 201.19. (Tr. 6.)

## VI.    Issues for Review

Petitioner presents the following issues with respect to the ALJ's and the Appeals Council's findings:

1) the ALJ and the Appeals Council erred finding that Petitioner did not meet or equal Listing 12.05(C);

2) the ALJ and the Appeals Council erred in rejecting Dr. Rosekran's opinion;

3) the ALJ and the Appeals Council erred in failing to consider the impact of Petitioner's borderline intellectual function's impairment on his ability to work.

## VII.    Discussion

Plaintiff argues the ALJ erred in not finding that he meets or equals the Mental Retardation impairment listed in Appendix A, Section 1205.

A claimant is presumptively disabled and entitled to benefits if he or she meets or equals a listed impairment. To meet a listed impairment, a disability claimant must establish that his condition satisfies each element of the listed impairment in question. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999). To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings at least equal in severity and duration to each element of the most similar listed impairment. *Tackett*, 180 F.3d at 1099-1100 (quoting 20 C.F.R. 404.1526).

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT  ~ 6**

"The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that [the claimant's] impairment meets the listing." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.

Section 1205 provides:

Mental retardation refers to significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period: *i.e.* the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements of A, B, C, or D are satisfied.

\*\*\*

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.[2]

29 C.F.R. 20, App. 1 to Subpart P of Part 404, 12.00.6 Intelligence tests provides:

a. The results of standardized intelligence tests may provide data that help verify the presence of intellectual disability or organic mental disorder, as well as the extent of any compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.

A formal diagnosis of mental retardation is not required to meet Listing 12.05C. *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006); *see also Pedro v.*

[2]When a claimant's verbal, performance, and full scale IQs differ, "the lowest of these [is used] in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.D.6.c.

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ~ 7**

*Astrue*, 849 F.Supp.2d 1006, 1010 (D. Or. 2011) (noting that although the Ninth Circuit has yet to rule on this issue, several district court within the Ninth Circuit have so concluded). An ALJ may reject IQ scores that are inconsistent with a claimant's daily activities and behavior, especially when the scores are based on a one time examination by a nontreating psychologist. *Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005).

Although not specifically addressed by the Ninth Circuit, many Circuits have accepted the presumption that IQ remains fairly constant. *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001); *see also Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001); *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir.1989); *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir.1986). "[A]bsent evidence of sudden trauma that can cause retardation, the [SSI claimant's adult] IQ tests create a rebuttable presumption of a fairly constant IQ throughout her life." *Talavera v. Astrue*, 697 F.3d 145, 152 (2nd Cir. 2012). The reason for this is because the requirements that a claimant's intellectual disability arose before age 22 "seems intended to limit coverage to an innate condition rather than a condition resulting from a disease or accident in adulthood." *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007) (citations omitted). In addition, there are many possible reasons why an adult would not have obtained an IQ test early in life, so requiring a contemporaneous qualifying test score would present intractable problems of proof in many cases of legitimate intellectual ability. *Talavera*, 697 F.3d at 152.

Additionally, circumstantial evidence can infer a deficit in adaptive functioning prior to the age of 22. *See Campbell v. Astrue*, 2011 WL 444783 *17 (E.D. Cal. Feb. 8, 2011) (citing examples of such evidence, including attendance in special education classes, dropping out of high school prior to graduation,

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT  ~ 8**

1  difficulties in reading, writing or math, and low skilled work history);[34] *see also*

2  *Christner v. Astrue*, 498 F.3d 790, 794 (8th Cir. 2007); *Markle v. Barnhart*, 324

3  F.3d 182, 184 (3rd Cir. 2003); *Taylor v. Astrue*, 2011 WL 4055243 (E.D. Cal. Sept.

4  12, 2011) (identifying factors and cases).

5       The only evidence in the record that directly addresses Petitioner's IQ is the

6  evaluation and assessment prepared by Dr. Rosekrans. The evaluation indicated

7  the following scores: 62 verbal; 72 performance; and 65 full scale. (Tr. 313.) Dr.

8  Rosekrans diagnosed Petitioner with Adjustment Disorder with Mixed Anxiety

9  and Depressed Mood, and Borderline Intellectual Functioning (Tr. 314.)  He

10  identified the following *marked functional limitations*: ability to relate

11  appropriately to co-workers and supervisors; and ability to respond appropriately

12  to and tolerate the pressures and expectations of a normal work setting; the

13  following *moderate functional limitations*: ability to understand, remember and

14

15  [3]*See, e.g., Gomez v. Astrue,* 695 F.Supp.2d 1049, 1054-55 (C.D.Cal. 2010);

16  *Payne v. Astrue,* 2010 WL 654319 (D. Ariz., Feb. 23, 2010) at *11.

17  [4]The Social Security Administration identified a number of sources that define

18  adaptive functioning. *See* Technical Revisions to Medical Criteria for

19  Determinations of Disability, 67 FR 20018-01. It noted that the Diagnostic &

20  Statistical Manual of Mental Disorders with Technical Revisions ("DSM-IV-TR)

21  instructs that adaptive functioning refers to how effectively individuals cope with

22  common life demands and how well they meet the standards of personal

23  independence expected of someone in their particular age group, sociocultural

24  background, and community setting." Deficits in adaptive functioning are shown

25  by "significant limitations in at least two of the following skill areas:

26  communication, self-care, home living, social/interpersonal skills, use of

27  community resources, self-direction, functional academic skills, work, leisure,

28  health, and safety." *Id.* at 49.

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**  ~ 9

1  follow complex (more than two step) instructions; ability to learn new tasks;
2  ability to interact appropriately in public contacts; and ability to control physical
3  or motor movements and maintain appropriate behavior; and the following *mild*
4  functional limitations: ability to understand, remember and follow simple (one or
5  two step) instructions; ability to exercise judgment and make decisions; and ability
6  to care for self, including personal hygiene and appearance. (Tr. 315). In his
7  narrative, however, Dr. Rosekrans concluded that, in his opinion, Petitioner did
8  not show deficits in adaptive functioning and his IQ reflects lack of academic
9  skill, not mental handicap. (Tr. 319.) He relied on the fact that Petitioner worked
10 construction, lived by himself, and functioned adequately. (Tr. 319.)

11    The ALJ found that Petitioner's borderline intellectual functioning does not
12 meet or medically equal listing 12.05. (Tr. 26.) In so concluding, the ALJ relied on
13 Petitioner's past ability to engage in significant work activities, as well as relying
14 on Dr. Rosekrans' opinion set forth above. (Tr. 26-27.)

15    The ALJ erred in relying on Petitioner's previous work history to prove
16 non-disability. *See Luckey v. U.S. Dept. of Health & Human Services,* 890 F.2d
17 666, 669 (4th Cir.1989) ("[T]he Secretary may not rely upon previous work
18 history to prove non-disability where the section 12.05(C) criteria are met: 'When
19 a claimant for benefits satisfies the disability listings, benefits are due
20 notwithstanding any prior efforts of the claimant to work despite the handicap.' ")
21 (citing *Murphy v. Bowen,* 810 F.2d 433, 438 (4th Cir.1987)); *see, e.g., King v.*
22 *Barnhart,* 2007 WL 968746, at *4, *6 (S.D.Ind. Feb.26, 2007) (finding that
23 plaintiff met Listing 12.05(C) and noting that when plaintiff "had been in better
24 physical shape at a younger age, he had managed to hold a number of different
25 jobs ... despite his intellectual limitations," but that "when [plaintiff] also had to
26 cope with significant physical impairments, it became much more difficult for him
27 to work."). The ALJ failed to take into account that notwithstanding Petitioner's
28 statements that he worked full-time, he never made over $6,700 in any one year.

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT  ~ 10**

(Tr. 135.) In fact, his average earnings from 1997-2007 were approximately $3,742. Also, the nature of his security work was not full-time work. Although Petitioner testified he worked forty hours a week, his responsibilities included providing security at events that occurred at various times throughout the week, but not in a consistent fashion. *See* Tr. 51.  Thus, while Petitioner was able to work, it was mostly part-time work. His work history is not materially inconsistent with an IQ signifying mild mental retardation.

Moreover, the ALJ erred in relying on the inconsistent and ambiguous opinion of Dr. Rosekrans where he identified marked and moderate functional limitations that reflected adaptive deficits, but he stated that Petitioner's IQ reflects lack of academic skills, not mental handicap. These functional limitations do not appear to be the result of poor academic skills. The ALJ concluded that Dr. Rosekrans' opinion regarding the limitations was not supported by the record; however, the functional limitations identified by Dr. Rosekrans are supported by the low IQ scores. Rather than acknowledge the inconsistencies and obtain additional information, the ALJ simply rejected Dr. Rosekrans limitations.

Here, Petitioner completed the eleventh grade. He reported he left school because of a criminal conviction, but he has never obtained his GED. He testified he has difficulty reading big words and has difficulty with spelling. He told Dr. Rosekrans that he does not read newspapers or read books. His girlfriend fills out his applications for him. Also, at the hearing, he described his construction job as carrying heavy palettes and boards. (Tr. 47.) His description of this job, along with his earnings, does not reflect a typical construction job. At the time of the hearing, he was living with a friend, not by himself.

There is nothing in the record, however, that indicates whether Petitioner attended special education classes. Indeed, the majority of the record involves medical records dealing with Petitioner's lower back and knee impairments. It does not appear that Dr. Rosekrans considered Petitioner's educational

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT  ~ 11**

1  background and specifically whether he attended special education classes in
2  making his determination that Petitioner did not have adaptive deficits.

3      A Social Security ALJ has an "independent duty to fully and fairly develop
4  the record and to assure that the claimant's interests are considered." *Tonapetyan*
5  *v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ must supplement the
6  record if: (1) there is ambiguous evidence; (2) the ALJ finds that the record is
7  inadequate; or (3) the ALJ relies on an expert's conclusion that the evidence is
8  ambiguous. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

9      Here, the ambiguity of Dr. Rosekrans opinion regarding his conclusions that
10  Petitioner does not have adaptive deficits while at the same time noting marked
11  limitations in functional ability, as well as the failure to Dr. Rosekrans to consider
12  Petitioner's educational history and school records, triggered the ALJ's
13  requirement to supplement the record. It is necessary to obtain evidence regarding
14  Petitioner's educational background to determine whether Petitioner has deficits in
15  adaptive functioning. If his educational history and school records demonstrate
16  that Petitioner was in special education or indicate below-average course work, it
17  is likely that Petitioner will meet the requirements of Listing 12.05C, given that
18  the Commissioner has agreed that he has significant work-related limitations of
19  function. The Court remands this matter to the ALJ to consider Petitioner's
20  educational records and other factors set forth above in determining whether
21  Petitioner has met the Listing 12.05C.

22      Accordingly, **IT IS HEREBY ORDERED**:

23      1.  Plaintiff's Motion for Summary Judgment, ECF No. 15, is **GRANTED**.

24      2.  Defendant's Motion for Summary Judgment, ECF No. 18, is **DENIED**.

25      3.  The decision of the Commissioner of Social Security is reversed for the
26  reasons indicated above; and

27  ///

28  ///

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

4.  This case is remanded for further proceedings consistent with this order.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and forward copies to counsel. Judgment shall be entered for Plaintiff, and the file shall be **CLOSED**.

**DATED** this 25th  day of September, 2013.


_s/Robert H. Whaley_

ROBERT H. WHALEY
United States District Judge

Q:\RHW\aCIVIL\2011\Whiteside\sj2.wpd

**ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ~ 13**